UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 17-323-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CODI DODGE | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Before the Court is an emergency motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), or alternatively, a motion for a sentence of time served followed by a term of supervised release, filed by the Defendant, Codi Dodge ("Dodge"). Record Document 203. The Government opposes Dodge's motion. Record Document 205. For the following reasons, Dodge's motion [Record Document 203] is hereby **DENIED**.

### I. Background

Dodge is a former police officer with the St. Martinville Police Department. In December of 2017, Dodge was named in a seven-count indictment in the Western District of Louisiana based on two separate incidents in which he allegedly used unreasonable physical force resulting in bodily injury against an arrestee while acting as a law enforcement officer. The indictment also included charges that Dodge acted illegally in order to cover up these incidents. On November 5, 2018, a jury found Dodge guilty on four counts: (1) deprivation of rights under color of law, in violation of 18 U.S.C. § 242; (2) conspiracy to tamper with a witness and make false reports, in violation of 18 U.S.C. § 371; (3) false report, in violation of 18 U.S.C. § 1519; and (4) tampering with a victim, witness, or informant, in violation of 18 U.S.C. § 1512(b)(3). Record Documents 1 & 112. On February 14, 2019, Dodge was sentenced to 108 months' imprisonment and three years of

supervised release. Record Document 158. He is currently housed at Butner Federal Medical Center ("Butner FMC"). His projected release date is July 2, 2026.

Due to COVID-19, Dodge asks the Court to "resentence him to a sentence of imprisonment of time served, or in the alternative, a sentence of time served followed by a term of supervised release not to exceed the balance of his original prison sentence," pursuant to 18 U.S.C. § 3582(c). The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a global pandemic related to the spread of the COVID-19 virus, a strand of the novel coronavirus. The CDC has advised that persons over the age of sixty-five and those with certain underlying medical conditions are considered high risk and are particularly susceptible to contracting the virus. In light of this pandemic, the President of the United States has declared a national emergency and many governors have declared public health emergencies. The CDC and all health authorities have strenuously recommended social distancing as a means of limiting community spread of the virus.

The prison population is particularly at risk due to the conditions of confinement, the close contact of inmates, and the inability to maintain social distancing. Responding to this concern, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "expand[s] the cohort of inmates who can be considered for home release." Pursuant to that provision of the CARES Act, United States Attorney General William Barr issued an April 3, 2020, memorandum instructing the BOP to maximize transfer to home confinement of "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations." *See* Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *The Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), https://www.justice.gov/coronavirus (last visited

6/25/2020). The April 3 memo urged the BOP to undertake its review urgently and assess inmates with high risk factors for COVID-19 who would be appropriate candidates for release. If they are deemed good candidates, the Attorney General instructed the BOP to immediately process the respective inmates and to immediately transfer those inmates to their homes, after a fourteen-day quarantine. The BOP responded to confirm the urgency of the situation and announced that it is reviewing all inmates who satisfy the Attorney General's criteria for release. It has committed additional resources to complete this task as quickly as possible.

In this case, Dodge is thirty-six years old and has not alleged that he suffers from any medical conditions. Nonetheless, Dodge argues that extraordinary and compelling reasons warrant a reduction of his sentence and immediate release from confinement because "[t]he rampant spread of COVID-19 through federal facilities" makes it unsafe for him to be confined. Record Document 203-1, p. 4. Dodge provides no other reason explaining why his release is warranted by § 3582(c).

Dodge spends more time analyzing the factors set forth in 18 U.S.C. § 3553(a), which must be considered by the Court if it finds extraordinary and compelling reasons for relief. First, Dodge asserts that he is working on assignment in Butner FMC and is not being provided adequate personal protective equipment. *Id.* at 4. Dodge states that if he refuses to attend his work detail at Butner FMC, he will be placed in the Secure Housing Unit, which would effectively result in solitary confinement. *Id.* at 4–5. Second, Dodge argues that his offenses were not "categorically crimes of violence" and that his risk of recidivism is low because he will never serve as a police officer again. *Id.* at 5. Third, Dodge avers that his "impeccable conduct in prison weighs heavily in his favor." *Id.* Finally, Dodge argues that he has a re-entry plan "that will prevent recidivism and ensure his health and safety as well as the public's health and safety." *Id.* Based on these reasons, Dodge concludes that the § 3553(a) factors support his request for relief.

In response, the United States argues that Dodge is not entitled to the relief requested because his concerns regarding COVID-19 do not constitute "extraordinary and compelling reasons" under the compassionate release statute. Record Document 205, p. 4. In particular, the Government states that the grounds for compassionate release that the Sentencing Commission has identified are all based on individual circumstances such as health, age, and family responsibilities, rather than the generalized COVID-19 concerns that Dodge has enunciated, which "thousands of offenders could cite in compassionate release motions." *Id.* at 6.

## II. Law and Analysis

### A. Exhaustion of Remedies

Dodge has filed his motion for a sentence modification under the First Step Act of 2018. He asks the Court to grant him compassionate release per 18 U.S.C. § 3582(c)(1)(A)(i).[1] This allows for the modification of a term of imprisonment upon a finding that certain extraordinary and

---

[1] It is important to distinguish between the CARES Act, on the one hand, and § 3582 as amended by the First Step Act on the other. The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population. The CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.

Section 3624(c)(2) authorizes the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2). The CARES Act, in turn, provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement. Thus, home confinement determinations rest with the BOP.

In this case, Dodge seeks judicial relief under 18 U.S.C. § 3582, which permits the district courts to reduce a prisoner's term of imprisonment under certain circumstances. Thus, the statute applicable to the Court's analysis here is § 3582, not the CARES Act and its expansion of § 3624(c)(2).

compelling reasons warrant a reduction in an inmate's sentence. As amended by the First Step Act in December of 2018, the compassionate release provision provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to allow prisoners to petition the district courts as set forth above. However, as the statute makes plain, prior to filing a motion for release in the district court, a prisoner must first exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of 30 days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The administrative-exhaustion provision is set out in mandatory terms—the district

court can modify a sentence only after the defendant has exhausted administrative remedies. This mandatory language includes no exceptions, equitable or otherwise.

Here, the exhaustion requirement has been satisfied. Dodge filed a request with the BOP to have the remainder of his sentence converted to home confinement, and it was denied on April 22, 2020. Record Document 203-1, p. 1. Moreover, the Government concedes that has Dodge exhausted his administrative remedies. Record Document 205, pp. 2–4. The exhaustion issue having been resolved, the Court finds it has the authority to address the merits of Dodge's request to modify his sentence under § 3582 and will turn to that inquiry now.

### B. Extraordinary and Compelling Reasons

The Court finds that Dodge has not demonstrated that extraordinary and compelling reasons warrant a reduction of his sentence. Section 3582(c)(1)(A) would permit a reduction in the term of imprisonment, subject to consideration of the § 3553(a) factors, if such reduction is "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community. Under § 1B1.13 Application Note 1, the following are deemed

extraordinary and compelling reasons: (1) defendant's medical condition;[2] (2) defendant's age;[3] (3) family circumstances;[4] or (4) other reasons. U.S.S.G. § 1B1.13, cmt. n.1. "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D).

The Court finds that Dodge has failed to present evidence of extraordinary and compelling reasons to modify his prison sentence. Dodge has not alleged that he has any medical conditions that would place him at greater risk of severe illness with COVID-19 than any other inmate. Indeed, he does not meet any of the criteria set forth by the statute. Dodge is not terminally ill; is not suffering from a serious physical or medical condition; is not suffering from a serious functional or cognitive impairment; is not experiencing deteriorating physical or mental health because of the aging process; is not sixty-five years old; and is not experiencing dire family circumstances. It is clear Dodge relies on the catchall provision which requires proof of extraordinary and compelling circumstances, but he has failed to make a sufficient showing to garner the requested relief. Instead, Dodge attempts to argue that his release is warranted based on the § 3553(a) factors, which are irrelevant if Dodge cannot demonstrate extraordinary and compelling circumstances under § 3582(c).

---

[2] The defendant must be suffering from a terminal illness, or (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or (3) deteriorating physical or mental health because of the aging process, which substantially diminishes the defendant's ability to provide self-care in the prison environment and from which the defendant is not expected to recover. U.S.S.G. § 1B1.13, App. Note 1(A).

[3] Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, App. Note 1(B).

[4] Family circumstances require the death or incapacitation of the caregiver of the defendant's minor child or children or the incapacitation of the defendant's spouse or registered partner where the defendant is the only available caregiver for him or her. U.S.S.G. § 1B1.13, App. Note 1(C).

The only statement Dodge makes in support of his claim of extraordinary and compelling circumstances is that "[t]he rampant spread of COVID-19 through federal facilities, which has resulted in scores of infections and deaths, make it unsafe" for him to continue to be confined. Record Document 203-1, p. 4. This blanket legal conclusion falls far short of meeting the requisite legal standard. Most importantly, the circumstances noted by Dodge are not unique to him, but rather are faced by all prisoners.

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the Defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner.[5] In short, Dodge

---

[5] One of the only appellate court to have addressed a motion for compassionate release based on COVID-19 concurs with this Court's conclusions. In *Raia*, despite acknowledging that COVID-19 presents a considerable threat to the health of federal inmates, the Third Circuit nonetheless explained that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive professional efforts to curtail the virus's spread." *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020). The Third Circuit added that the "BOP's shared desire for a safe and healthy prison environment" and "the Attorney General's directive that [the] BOP 'prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic'" only highlighted the BOP's seriousness in handling the present crisis and the value of requiring inmates to first exhaust administrative remedies. *Id.*

has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the compassionate release statute.

### C. § 3553(a) Factors

Even if Dodge were able to meet his burden under § 3582(c), his motion would be denied based on the § 3553(a) factors. Dodge argues that the Court must consider "the need for the sentence imposed . . . to provide the defendant . . . with medical care . . . in the most effective manner." Record Document 203-1, p. 4 (quoting 18 U.S.C. § 3553(a)(2)(D)). Dodge asserts that this factor weighs in his favor because he is assigned to and is working in Butner FMC, where the inmates are not being provided with adequate personal protective equipment. *Id.* Although COVID-19 has arrived at Butner, Butner FMC is currently reporting only five active inmate cases and four active staff cases. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited July 4, 2020). Thus, Dodge has not shown how his release from confinement at Butner FMC is necessary for him to receive medical care in an effective manner.

Section 3553(a) also states that the Court should consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Dodge argues that this factor should weigh in his favor because his offenses were not "categorically" crimes of violence, he has a clean prison record, and his risk of recidivism is low because he will never serve as a police officer again. Record Document 203-1, p. 5. To begin, the Court finds Dodge's characterization of his crimes to be misleading. The facts underlying his conviction for deprivation of rights under color of law were that Dodge, while acting as a police officer, struck his victim in the face with his service weapon which cut the victim's eye. The Court observes that striking someone with a firearm is a violent act. Second, Dodge provides no evidence in support of his assertion that he has a clean prison record. Finally, the Court acknowledges that the BOP's denial of his request for release states that Dodge has a low risk of

recidivism. Record Document 203-2, p. 1. However, this assessment alone is not sufficient to show that the § 3553(a) factors weigh in favor of Dodge's requested relief.

### III. Conclusion

Although the Court does not wish to minimize the significance of this outbreak or the risks that face those within the prison population, the Court does not have carte blanche to release whomever it chooses. Instead, it is up to each defendant to demonstrate how his release is appropriate under the statutory framework to which the Court must adhere. Unfortunately for Dodge, he has not done so.

Accordingly, Dodge's motion for release [Record Document 203] is **DENIED**.

**THUS DONE AND SIGNED** this 6th day of July, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE