UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:17-cr-323 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CODI DODGE (1) | MAGISTRATE JUDGE AYO |

## REPORT AND RECOMMENDATION

Before the Court are the original and amended MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY filed pursuant to 28 U.S.C. § 2255 by defendant Codi Dodge.  Rec. Docs. 214, 223.  Dodge challenges the effectiveness of his trial counsel.  The government filed a response to the motion (Rec. Doc. 225) to which Dodge replied (Rec. Doc. 235).  The motions, which have been referred to the undersigned Magistrate Judge for review, report, and recommendation, are now ripe for review.

### I.    Factual Background

The convictions of Codi Dodge, the Deputy Chief of Investigations at the St. Martinville Police Department, resulted from his assault of Curtis Ozenne, a St. Martinville man whom Dodge suspected of stealing a window-mounted air-conditioning unit from one of Dodge's rental properties.[1]

The facts, as summarized by the Fifth Circuit, are as follows:

---

[1] The jury deadlocked on the count based on Dodge's alleged efforts to destroy Ozenne's cell phone after his arrest and, thus, to prevent the sending of an incriminating voice recording Ozenne claimed he captured.  Rec. Doc. 112. Dodge had also been charged with an incident involving his kicking another suspect in the face and later manipulating police reports to state he kicked the suspect in a shoulder nerve to allow for easier handcuffing. He was acquitted of counts relating to that conduct. Rec. Docs. 112-114.

In August 2016, Codi Dodge, the Deputy Chief of Investigations for the St. Martinville Police Department in Louisiana, was notified that a window mounted air-conditioning unit was stolen from a home he owned and rented. Dodge and two other St. Martinville police officers, Kim Talley and Troy LeBlanc, drove to Dodge's rental property to investigate. When the officers arrived, they saw that an air-conditioning unit was missing from the front window of the home. Investigating the theft, Dodge asked neighbors whether they saw anyone take the window unit. A neighbor told Dodge that Curtis Ozenne was the thief. The officers then went to Ozenne's house.

Dodge and LeBlanc went to Ozenne's front door, and Talley went to the side of the house where the officers thought there was another door. Without Ozenne's consent, Dodge entered the home. Neither LeBlanc nor Talley accompanied Dodge inside the home. According to Ozenne, he was in the back of the house when Dodge entered. When Dodge called Ozenne's name, Ozenne left the back room and entered the hallway. It was then that he saw Dodge inside the home with his firearm drawn. Dodge began to question Ozenne about the missing air-conditioning unit, and a physical altercation ensued. Ozenne alleged that Dodge started by poking Ozenne in the face with Dodge's firearm, then hit Ozenne with the weapon, and also bit Ozenne on the chest. LeBlanc and Talley, who remained outside, did not see this altercation.

Following Ozenne's arrest, he filed a complaint with the FBI about Dodge's conduct. The FBI investigated Dodge's actions during Ozenne's arrest as well as Dodge's conduct during an unrelated arrest of another individual. As part of its investigation of Ozenne's arrest, the FBI contacted Talley and LeBlanc for interviews. Before those two officers spoke with the FBI, they met Dodge at the police station to "get their stories straight." During the meeting, the officers concocted a story about Ozenne's arrest. Dodge and LeBlanc told the FBI the false story and drafted police reports to match their version of events. Talley, however, did not tell the FBI the false story; she told the FBI a sanitized version of the truth.

*United States v. Dodge*, 814 Fed. App'x 820, 821-22 (5th Cir. 2020).

## II.    Procedural Background

The FBI's investigation led to the grand jury returning a seven-count indictment charging Dodge with two counts of deprivation of rights under color of law in violation of 18 U.S.C. § 242, one count of conspiracy to tamper with a witness and make false reports in violation of 18 U.S.C. § 371, two counts of making a false record to impede an investigation in violation of 18 U.S.C. § 1519, one count of tampering with a witness in violation of 18 U.S.C. § 1512(b)(3), and one count of destruction of records in violation of 18 U.S.C. § 1519. *Id.* at 822.  Kay Gautreaux was appointed to represent Dodge at the arraignment. Rec. Doc. 8. Kevin Stockstill and Katherine Guillot were later retained.

A jury trial began on October 29, 2018, and continued until November 5, 2018 when the jury returned a verdict of guilty as to Counts 2, 3, 5, and 6 and not guilty as to Counts 1 and 4.  On February 14, 2019, Dodge was committed to the custody of the Bureau of Prisons for a term of 108 months as to Counts 2, 5, and 6 and 60 months as to Count 3, to run concurrently.

On May 19, 2020, the Fifth Circuit affirmed Dodge's conviction and sentence. The decision was issued as a mandate and entered into the district court record on June 10, 2020. The issues on appeal related to the evidence of Dodge's "other acts," limitations on cross-examination, and the reasonableness of Dodge's sentence. Rec. Doc. 207.

### III.    Section 2255 Motion

Dodge timely filed the instant motion on October 13, 2020, alleging that he was "deprived of a fair trial where counsel rendered ineffective assistance during the pretrial, trial, and post-conviction stages of the trial proceedings." (Rec. Doc. 214, p. 4). Specifically, he claims ineffective assistance (1) where defense counsel did not execute adequate cross-examination of key government witnesses (*id.* at p. 5); (2) where defense counsel failed to object to prosecutorial misconduct (*id.* at p. 6); (3) where counsel failed to timely advocate the government's abuse of the grand jury such that dismissal of the indictment is warranted (*id.* at p. 8); (4) where counsel failed to call Christian Feller and Chief Hebert as witnesses (*id.* at p. 8); (5) where counsel failed to present the defenses of "hot pursuit" and "community care taking function" (*id.* at p. 9); (6) where counsel failed to advocate for a special verdict form on the conspiracy offense to ensure a unanimous verdict by jurors (*id.* at p. 60); (7) where counsel failed to object to the court's response to the jury's note (*id.* at p. 62); and (8) where counsel failed to object to prosecutor's comments and closing arguments (id. at p. 66).

#### a.  Law and Analysis

##### 1.  28 U.S.C. § 2255

Following conviction and exhaustion or waiver of the right to appeal, the court presumes that a defendant "stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)). Relief under § 2255 "is reserved for transgressions of constitutional

rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). However, the collateral challenge process of § 2255 is no substitute for appeal. *See, e.g., Brown v. United States*, 480 F.2d 1036, 1038 (5th Cir. 1973). As a general rule, thus, claims not raised on direct appeal may not be raised on collateral review unless the defendant shows cause and prejudice for his failure, or actual innocence. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). This is neither a statutory nor constitutional requirement, but instead a "doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). While it is generally the government's responsibility to raise the issue of procedural default, the court may still impose the bar *sua sponte. United States v. Willis*, 273 F.3d 592, 596–97 (5th Cir. 2001). However, this should not be done without first considering whether the defendant has been given notice of the issue and had opportunity to argue against application of the bar, and whether the government has intentionally waived the defense. *Id.* at 597 (citing *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).

## 2.  Ineffective Assistance of Trial Counsel

Dodge raises numerous claims of ineffective assistance of counsel.  Ineffective assistance claims may be brought for the first time in a collateral proceeding under § 2255 regardless of whether the defendant raised the issue earlier.  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  Therefore, review of this claim does not require a determination of whether  a defendant raised all aspects of this claim on direct appeal. *Id.*; see also *United States v. Johnson*, 124 Fed. App'x 914, 915 (5th Cir. 2005).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. 466 U.S. at 687.  A defendant must satisfy both prongs of the *Strickland* test in order to prevail, and the court need not approach the inquiry in the same order or address both components should the defendant fail to satisfy one.  *Id.* at 697.

The first prong does not require perfect assistance by counsel; rather, defendant must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 687–88.  In this review, courts "must make 'every effort  .  .  .  to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

6

counsel's perspective at the time.'" *United States v. Fields,* 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second prong, the court looks to any prejudice suffered as a result of counsel's deficient performance. This prong is satisfied if the defendant can show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt" and that the errors were sufficiently serious to deprive the defendant of a fair trial with a reliable verdict. *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95). Under *Strickland*, the court may also consider the cumulative prejudice from counsel's errors. *See Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (addressing each issue of deficient performance found by the district court before considering whether the petitioner was cumulatively prejudiced thereby); *see also Dodson v. Stephens*, 611 Fed. App'x 168, 178 (5th Cir. 2015) (assuming without deciding that *Strickland* calls for a cumulative prejudice analysis). Dodge asserts that counsel were ineffective in multiple respects.

### 1. Defense counsel did not execute adequate cross-examination of key government witnesses, *i.e.*, LeGrange, Broussard, LeBlanc, Ozenne and Prade.

Dodge contends that counsel were ineffective during cross-examination of witnesses.[2] Decisions regarding cross-examination are strategic and "will not

---

[2] In the section labelled "Ground Two," Dodge addresses this issue as to LaGrange, Broussard, LeBlanc, and Ozenne. In section labelled Ground Five, he discusses this issue as to Marie Prade, the

support an ineffective assistance claim." United *States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). "A few cherry-picked examples of mistakes or bad answers over the course of a long trial do not amount to constitutionally ineffective lawyering. Speculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir. 2016) (citing *Strickland*, 466 U.S. at 689).

Dodge asserts that counsel was ineffective in failing to cross-examine Vicky LaGrange and Lora Broussard about their bias against him because of an incident concerning the 2004 arrest of the nephew of Chief Smith. The government argues that counsel's decision not to ask about an incident in 2004 was a strategic decision, which should not be second-guessed. Furthermore, an incident, occurring ten years earlier and not involving them directly, would likely have been too attenuated to establish any specific bias against him.

LaGrange testified that Dodge had told her to say that she, not LeBlanc, had found drugs during a search and that she was moved to patrol because she did not obey him. Rec. Doc. 181, p. 76. However, during cross-examination, Mr. Stockstill was able to elicit testimony that she never told the chief of police about Dodge's instructing her to falsify her report. *Id*. at pp. 82-83. Broussard, a secretary at the St. Martinville Police Department, testified that Dodge made a comment that he would have broken another suspect's fingers. Rec. Doc. 184, pp. 951-952. During

---

nurse who examined Ozenne. In his amended Section 2255 motion, he adds an argument as to Ozenne. All claims concerning ineffective assistance of counsel as to cross-examination of witnesses will be addressed together herein.

cross-examination, Ms. Guillot elicited testimony that Dodge never actually had contact with that suspect. *Id*. at p. 95.

Dodge claims that counsel should have more effectively cross-examined Marie Prade, the nurse who treated Ozenne when he was taken to the jail. Dodge was present when Prade asked Ozenne about his injured eye, and Ozenne responded that he had hit himself against the wall. She did not consider that explanation consistent with the type of injury. Rec. Doc. 183, p. 175. When she examined Ozenne the next day because the eye was completely shut, he stated that he had been hit by Dodge. *Id*. at p. 177.

Dodge claims that the attorney should have cross-examined Prade with her grand jury testimony and elicited testimony that she was related through her ex-husband to the victim of the other incident with which the defendant was charged. The Court agrees with the government's contention that the transcript of Prade's testimony demonstrates that these questions were not necessary to effectively cross-examine her. Counsel was able to show that her notes never mentioned that Ozenne's injuries were due to a blow by Dodge:

> Q.    Why would you again put that inmate states he fell and hit the wall with—on this date when supposedly he said that he was struck by Officer Dodge?
>
> A.    Because that's not something that I normally put in my notes.
>
> Q.    What's not something that you would normally put in your notes?
>
> A.    I don't put—I only put what I observed.
>
> Q.    Okay.

9

A.    I don't normally put that, okay, like if an inmate, you know, had an altercation with an officer, that's just not something that I practice as a nurse.

Q.    Okay. Then why would you put in the note that he stated that he fell and hit the wall if that's not something that you normally put into your notes?

A.    Because that's what the inmate told me, that he fell and hit the wall.

Q.    Okay. But then on the second day supposedly he told you that he was struck by Officer Dodge.

A.    Right.

Q.    I don't understand why you would put—repeat in your note that he said that he fell and hit the wall.

A.    Again, I wouldn't put that in my professional notes.

Q.    You wouldn't put in your professional notes what allegedly caused the injury?

A.    It's not just something—that's something that I wouldn't normally do.

Q.    Okay. But you did put in your notes what allegedly caused the injury, right?

A.    Yeah, he said he fell and hit the wall.

*Id.* at pp. 183-188.

Dodge further asserts that counsel should have cross-examined Ozenne about his trespassing in the house where he was found and introduced his prior arrests for trespassing. However, as the government points out, whether or not Ozenne was permitted in that house does not change the fact that Dodge entered the house

without a warrant and beat him because he had stolen his air conditioner, not because he was trespassing. Thus, that type of inquiry would not have been necessarily effective. Nevertheless, on cross-examination, Ozenne did state that the house belonged to his grandparents. Rec. Doc. 181, p. 143.

Referring to the arrests would have been objectionable, as the motion filed by government before trial confirms. Rec. Doc. 45. The motion, which was granted and with which Dodge agreed (Rec. Docs. 50, 51) provides, in pertinent part, "Additionally, for any victim who does testify, the government moves to exclude reference to the evidence of any conviction that is not a felony or crime of dishonesty from the past ten years; any arrest or other bad conduct that does not reflect directly on truthfulness and satisfy the dictates of Rule 608(b); and any character evidence that is not in the form of reputation or opinion testimony or that does not relate to a trait that is 'pertinent' to this case." Rec. Doc. 45 at 3. The motion further cites Fed. R. Evid. 609 for the proposition that witnesses can only be impeached with prior convictions. Rec. Doc. 45. Thus, counsel was not ineffective in following the Court's order and in refusing to raise a meritless issue.

In the amendment to the Section 2255 motion, Dodge claims that counsel should have impeached Ozenne with a 1998 conviction for possession for stolen property.[3] However, as the government's motion cited above provides, convictions over ten years old are typically inadmissible because it is assumed that under Fed. R. Evid. 609 (b) any probative value of a remote conviction is outweighed by the

---

[3] Dodge claims but does not establish that the government failed to give him information about that conviction. This assertion is belied by his own exhibits which mention this conviction.

possible prejudicial effect. *United States v. Vo*, 589 F. App'x 720, 724 (5th Cir. 2014). Again, counsel was not ineffective for complying with the Court's order and refraining from asking objectionable questions.

In addition, the trial transcript demonstrates that Ms. Guillot was effective in cross-examining Ozenne. For instance, she cross-examined Ozenne about alleged discrepancies between his version of events and other evidence, apparent past inconsistent statements, his past encounters with law enforcement, and two civil suit settlement payments related to alleged police misconduct, including Dodge's actions. Rec. Doc. 181, pp. 139-157.

Next, Dodge argues that counsel was ineffective in cross-examining LeBlanc. He claims counsel should have asked LeBlanc about the proper preparation of police reports. The government asserts that asking LeBlanc about the procedure for writing police reports that Dodge asked LeBlanc to circumvent would not have been effective. The Court agrees and finds that the cross-examination was effective.  Mr. Stockstill was able to elicit testimony from LeBlanc in which he admitted that he lied to the FBI and the grand jury:

> Q:    Mr. LeBlanc, you've lied a whole lot, haven't you?
>
> A:    Yes, sir.
>
> Q:    And we aren't talking about little white lies. We're talking about lies that constitute crimes, correct.
>
> A:    Correct.
>
> Q:    Talking about lies to the FBI, correct?
>
> A:    Sir?

Q.      Lies to the FBI.

A.      Yes.

Q.      Which is a crime.

A.      Yes, sir.

Q.      Not being completely truthful to a grand jury.

A.      Correct.

Q:      Correct? Which is another crime, right?

A:      Yes, sir.

Rec. Doc. 183, pp. 59-60.  Mr. Stockstill went on to question LeBlanc in great detail about the lies to the FBI, lies to the grand jury, the benefits of his plea agreement, and his prior termination from the St. Martin Parish Sheriff's Office.  *Id*. at pp. 66-98.

The Court finds that the cross-examination of the witnesses was effective. *Castillo*, 640 F. App'x at 292 (finding that counsel's cross-examinations were not constitutionally defective as "[t]hey used cross-examination to elicit evidence and many statements favorable to [defendant]"). Dodge has not shown how a different cross-examination would have changed the outcome of the trial. *Id*. (finding that "even if cross-examination were ineffective, there was no showing how a different cross-examination would have created a reasonable probability of a different outcome.").

## 2. Counsel failed to object to prosecutorial misconduct which impeded Dodge's ability to call a defense witness.

Dodge contends that counsel failed to object to prosecutorial misconduct impeding Christian Feller, a police officer who participated in the incident giving rise to the counts of which Dodge was acquitted, from testifying. When the officers were attempting to arrest the victim from that incident, Feller encountered Ozenne in the defendant's car. Dodge claims that Feller would have testified that Ozenne was aiding and abetting the victim, a drug dealer, and would explain why both claimed their civil rights were violated. He also asserts that Feller would have testified about the preparation of police reports and the bias that LeBlanc, Broussard and LaGrange had against him. He attached a declaration by Feller.

Dodge asserts that the government threatened Feller with perjury charges if he testified on Dodge's behalf and that the government's comments about providing immunity to Feller were intended to conceal the threats. He also claims that the government used the grand jury process to prevent Feller from testifying by sending him a target letter after he testified in front of the grand jury.

"Substantial governmental interference" with a witness' decision to testify on behalf of the defendant can violate the defendant's due process rights. Under the Sixth Amendment, a defendant has the right to present witnesses without fear of retaliation by the government. Under the Fifth Amendment, the defendant is protected from "improper governmental interference with his defense." *United States v. Girod*, 646 F.3d 304, 310–11 (5th Cir. 2011) (cleaned up). "To make a showing that the government has infringed on this right, the defendant must show that 'the

14

government's conduct interfered substantially with a witness's 'free and unhampered choice' to testify." *United States v. Thompson*, 130 F.3d 676, 687 (5th Cir. 1997) (citations omitted). "[T]here must be evidence of threats or intimidation." *Girod*, 646 F.3d at 312.

Here, there were no threats or intimidation. Any comments concerning possible perjury charges do not necessarily constitute prosecutorial misconduct. *United States v. Bieganowski,* 313 F.3d 264, 291-292 (5th Cir. 2002) (holding that prosecutor's comment that a defense witness could be prosecuted for perjury did not amount to substantial interference); *United States v. Viera*, 839 F.2d 1113, 1115 (5th Cir. 1998) ("A prosecutor is always entitled to attempt to avert perjury and to punish criminal conduct.") (citations omitted); *Thompson*, 130 F.3d at 687 (holding that a warning of the consequences of perjury "even if carried out in a caustic manner, is no cause to dismiss the indictment against the defendants") (citation omitted).

The government argues, and the Court agrees, that contrary to Dodge's assertion, the government was facilitating, not impeding, Dodge's efforts to call Feller. Dodge has not established any nefarious intent behind the government's comments about providing Feller with immunity. During the trial, the prosecutor informed the Court that after he was informed by defense counsel that Feller had been subpoenaed, he indicated that Feller had been sent a target letter and that if the defense did intend to call him, the prosecutor would take the necessary steps to provide immunity to Feller. Rec. Doc. 183, p. 10. The prosecutor then stated, "After telling him that, the defense counsel informed me that it was his intention not to call

Chris Feller." *Id.*   The prosecutor explained, "Your Honor, at some point in the future, if there was any issue about whether we had impeded Chris Feller's testimony, this statement on the record demonstrates we haven't impeded it. When the defense told us of his intent, we told him we'd go through the steps to obtain immunity for his testimony." *Id.* Thus, the failure to raise this meritless claim cannot be considered ineffective assistance of counsel.

### 3. Counsel failed to timely advocate the government's abuse of the grand jury such that dismissal of the indictment is warranted.

Dodge contends that counsel was ineffective for failing to timely advocate the government's abuse of the grand jury and move for dismissal of the indictment. The filing of pretrial motions is considered a strategic decision, which is viewed with "deference commensurate with the reasonableness of the professional judgment on which [it] is based." *Strickland*, 466 U.S. at 681.

Dodge claims that LeBlanc was coerced by the government to lie to the grand jury and, thus, the indictment was invalid. Rec. Doc. 214-1, p. 28. The proceedings before the grand jury are entitled to a presumption of regularity which is not easily overcome. *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974); *Beverly v. United States* 468 F.2d 732, 743 (5th Cir. 1972). An indictment cannot be challenged on the basis of the reliability of evidence presented to a grand jury. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 260–261 (1988) (stating that an indictment "valid on its face" is not subject to challenge on the basis of the reliability or competence of the evidence presented to the grand jury" and "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment."); *Costello v.*

16

*United States*, 350 U.S. 359, 363- 364 (1956) (permitting pre-trial challenges to indictments on basis of inadequate evidence "would run counter to the whole history of the grand jury institution" and would result in defendants' insisting "on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury.").

Thus, Dodge's claims that the government did not have sufficient evidence to indict until LeBlanc testified could not have been the basis for any type of challenge to the validity of the indictment. Dodge, for instance, argues that before LeBlanc testified and with only Talley's testimony, there was not sufficient evidence to indict. That type of argument is specifically what the Supreme Court discouraged in *Bank of Nova Scotia*.

Prosecutorial misconduct supports dismissal of an indictment only if the misconduct was prejudicial to the defendant. *Bank of Nova Scotia*, 487 U.S. at 256, ("Dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations.") (quoting *United States v. Mechanik*, 475 U.S. 66, 78, (1986) (O'Connor, J., concurring)); *United States v. Whitfield*, 590 F.3d 325, 359 (5th Cir. 2009) ("Whether or not prosecutorial misconduct prejudiced a defendant depends on whether it affected the grand jury's decision to indict."). Perjury before the grand jury that was not sponsored by the government cannot form the basis of the dismissal of indictment. *United States v. Strouse*, 286 F.3d 767, 772–775 (5th Cir. 2002). Here, there is no

indication that there was perjury or that the government sponsored any perjury. Dodge's disagreement with LeBlanc's grand jury testimony does not negate the validity of the indictment or establish that the government presented perjured testimony. Counsel was not ineffective for failing to raise this frivolous claim.

In claiming that the government encouraged perjury, Dodge points to leading questions by the prosecutors during the grand jury proceedings. However, leading questions and hearsay are permissible in grand jury proceedings. *United States v. Cessa*, 861 F.3d 121, 142–43 (5th Cir. 2017).

In a footnote, Dodge claims that he should have been informed that LeBlanc was suffering from throat cancer. Rec. Doc. 214-1, p. 39. Besides Dodge's unsupported allegations, there is no evidence that LeBlanc was diagnosed or being treated for throat cancer during the trial. LeBlanc did die sometime before August 13, 2019, when the Court terminated his supervision. *United States v. Troy LeBlanc*, No. 17-CR-342, United States District Court, Western District of Louisiana, Rec. Doc. 25. At his sentencing on December 10, 2018, there was no mention of any illness that could have been a mitigating factor. The Court agrees with the government's contention that counsel cannot be considered ineffective for failing to discover this type of information which is, nevertheless, not *Brady* or *Giglio,* particularly because there is no indication LeBlanc was ill during the trial or that any illness impaired his ability to testify.

**4. Counsel failed to call Feller and Chief Hebert as witnesses.**

Dodge also asserts that counsel was ineffective for not calling Christian Feller and Chief Hebert as witnesses. It is well-established that because the decision to call witnesses is a strategic decision, complaints concerning the failure to call witness are not favored. *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009); *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005). To prevail on a claim based upon the failure to call witnesses, a defendant must name a witness, "demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler,* 601 F.3d 347, 352 (5th Cir. 2010) (citation omitted).

Although counsel had subpoenaed Feller, the ultimate decision not to call Feller as well as Chief Hebert was purely strategic. During closing argument, counsel referred numerous times to the failure of the government to call Feller and Hebert. Rec. Doc. 185, pp. 85-86, 89. Although Dodge has attached a declaration by Feller (Rec. Doc. 214-2, pp. 3-7), he has not shown that Feller's testimony would have made a difference.

Dodge also claims that Chief Hebert should have been called. However, he has not established the content of Hebert's testimony or whether he would have testified. The government contends that the strategic nature of the decision not to call Hebert is apparent not only during counsel's closing argument but also in the questioning of LeBlanc, who testified that Hebert was present during a conversation concerning the inclusion of certain information in a report. Rec. Doc. 183, pp. 621-622. Officer

19

Joseph Nedie testified that he informed Chief Hebert about Ozenne complaining repeatedly that Dodge had hit him, but Chief Hebert did not take action. Rec. Doc. 181, pp. 406-607. Thus, the government reasons that Chief Hebert may not have been a favorable witness for Dodge.

The Court concurs with the government's contention that the lack of prejudice in counsel's decision not to call these witnesses is demonstrated in the government's rebuttal. The prosecutor noted, "Chris Feller was definitely a significant part of the cover-up. He was the guy who came up with the shoulder. Do you think he was going to be a credible witness to testify?" Rec. Doc. 185, p. 99. The prosecutor continued, "And Calder Hebert helped a rogue police officer to continue doing what he was doing." *Id*. In claiming prejudice, Dodge contends that the evidence against him was weak as established by acquittal and mistrial on other counts. However, "[N]ot-guilty verdicts may not be used to attack the evidence supporting a guilty verdict." *United States v. Dubin*, 982 F.2d 318, 324 (5th Cir. 2020).

### 5. Counsel failed to present the defenses of "hot pursuit" and "community caretaking function."

Dodge next argues that counsel was ineffective for failing to present the defenses of "hot pursuit" and "community caretaking function. "The hot pursuit of a suspected felon can be one of the exigent circumstance exceptions to a warrantless entry. *United States v. Capote-Capote*, 946 F.2d 1100, 1103 (5th Cir. 1991). Contrary to Dodge's assertion, his attorney did assert this defense. In his opening statement, counsel stated:

> He threw the vehicle in park. He stepped out on the running board, and Ozenne was standing in the doorway, and he called out to him. He said, 'Curtis, come here.' And at that point, Curtis turned around and hightailed it into the house, and Dodge was right after him in ***hot pursuit***.

Rec. Doc. 181, p. 63 (emphasis added).

Furthermore, during cross-examination of the government's expert witness, Officer Najolia, counsel was able to elicit the following testimony:

> Q.    And if I'm in hot pursuit of a suspect, does it matter whether I know if that is his home or not?
>
> A.    If you're in hot pursuit, no. If there's exigent circumstances, you can make entry.
>
> Q.    And if I'm in hot pursuit and I have objective facts to show that maybe the dwelling that this person is going in has been abandoned, would that be even additional justification to enter after the suspect?
>
> A.    If you're in hot pursuit and you make an entry into a residence, you clearly—officers are trained that they want to effect the arrest, and they can make entry into a residence with exigent circumstances, yes.[4]

Rec. Doc. 184, p. 7. Dodge's expert witness testified that it was appropriate for Dodge to pursue Ozenne into the house under the hot pursuit exception. *Id.* at p. 113.

In addition, as the government argues, counsel was not ineffective in failing to argue the community-caretaking exception because the Fifth Circuit does not necessarily apply that exception to residences and because even if acknowledged in the Fifth Circuit, Dodge's conduct would not fall within that exception.

---

[4] On redirect, the government clarified that "an officer can't chase somebody into a private house simply because the officer thinks the person might have committed a crime." Rec. Doc. 184, p. 37.

The Supreme Court announced the community-caretaking doctrine in *Cady v. Dombrowski*, 413 U.S. 433 (1973), in which the officers' warrantless search of a vehicle was reasonable under the Fourth Amendment where they were engaged in "community[-]caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id*. at 441. "Since *Cady*, some circuits have expanded this 'community[-]caretaking' exception to searches of residences as well as automobiles, while others have explicitly declined to do so." *Ramirez v. Fonseca*, 331 F. Supp. 3d 667, 678 (W.D. Tex. 2018) (citations omitted). The Fifth Circuit has not directly addressed the applicability of the community-caretaking exception to searches of homes. In fact, "it has consistently acknowledged the constitutional distinction between searches of automobiles and residences." *Id*. at 678–79 (citations omitted).

In *Ramirez*, the court discussed *United States v. York*, 895 F.2d 1026 (5th Cir. 1990), the case cited by Dodge, as follows:

> In *United States v. York*, 895 F.2d 1026 (5th Cir. 1990), the Fifth Circuit did cite *Cady* to support its holding that the limited entry of police into a home to perform a peacekeeping function at the request of a guest did not violate the Fourth Amendment. *See id*. at 1030. In doing so, however, the panel noted that *Cady* stands for the proposition that "[m]any police activities involving the custody of ***motor vehicles*** are within the caretaking function of the police, and this may work to make a vehicle inspection or search reasonable." *Id*. (emphasis added). The Court therefore reads *York* as maintaining *Cady's* distinction between searches of automobiles and residences, rather than extending *Cady* to apply to residences as well. *But cf. Sutterfield*, 751 F.3d at 556 (describing the decision in *York* as "framed as an exigent circumstances decision, but stressing community caretaking role of police in abating noise disturbance").

331 F. Supp. 3d at 679 n.3.

The undersigned agrees with the government's contention that even if *York* is viewed as extending the community-caretaking exception to residences, *York* and that exception would not be applicable in the case at bar. In *York*, the defendant's houseguests called the police to the defendant's residence after he "had come home drunk" and threatened them. *Id.* at 1027. Upon request by the guests, the arriving officers escorted the guests into the residence so that they could safely retrieve their belongings and leave. *Id.* at 1027–28. The Fifth Circuit held that this entry was not a search under the Fourth Amendment because the officers' entry was "reasonably foreseeable" in light of the third parties' status as occupants of the residence and the defendant's "threatening actions" *Id.* at 1029. The officers were performing "community[-]caretaking functions," and this "reasonable police action did not violate any privacy interest" given the defendant's invitation to the third parties and his belligerent threats. *Id.* at 1030 (citing *Cady*, 413 U.S. at 441).

This reasoning in *York* suggests that the community-caretaking exception, as applied in the Fifth Circuit, did not justify Dodge's warrantless entry. Unlike the defendant in *York*, Ozenne did not take any action that would reduce his expectation of privacy in the house. Further, regardless of whether the community-caretaking exception extends to home entries, the Supreme Court intends the exception to apply to tasks that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441. Here, Dodge was entering to investigate the theft of his air conditioner. This exception

simply does not apply to Dodge's entry. Counsel was not ineffective for failing to present this defense.

### 6. Counsel failed to request a special verdict form as to Count Three.

Counsel claims that his attorney was ineffective for failing to request a special verdict form as to Count Three. Contrary to Dodge's assertions, the record indicates that counsel requested the special verdict form and objected when the Court decided not to include it.  Rec. Doc. 183, pp. 308-310.

### 7. Counsel failed to object to the Court's response to the jury note.

Dodge claims that counsel was ineffective for failing to object to the Court's response to the jury's note concerning unanimity. A district court's response to a jury note is considered a jury instruction. *United States v. Ramos-Cardenas,* 524 F.3d 600, 610 (5th Cir. 2008). A court does not err in providing instructions that track the Circuit's pattern jury instructions and constitute a "correct statement of the law." *United States v. Richardson*, 676 F.3d 491, 507 (5th Cir. 2012).  Here, the Court followed the pattern instructions and the applicable law.

Counsel was not ineffective for failing to object. *Seabridge v. United States*, Civil Action No. 1:17-CV-162, 2020 WL 4689196 at * 4 (E.D. Tex. June 30, 2020) (finding that defendant was not denied effective assistance of counsel for failure of attorney to object to response to jury note as "District Court's responses were correct statements of the law, and they largely tracked the language of the Fifth Circuit Pattern Jury Instructions.").

24

**8. Counsel failed to object to prosecutor's comments and closing arguments.**

Dodge asserts that counsel should have objected to remarks by the prosecutors during the trial. Specifically, he contends that counsel should have objected to the prosecutor's reference to the house in which Ozenne was living as *his* house when, in fact, Ozenne was trespassing. Rec. Doc. 214-1, p. 67.

However, counsel did make it clear that the house belonged to Ozenne's grandmother.

Q.    Now this—this is not a home that you own, correct?

A.    It's my grandparents'.

Q.    It's your grandparents' home?

A.    Uh-huh.

Q.    All right. And you were just staying there?

A.    (Nodding head.)

Rec. Doc. 181, p. 143.

Dodge also refers to gestures made by one of the prosecutors as to the incident of which Dodge was acquitted. Particularly, because Dodge was acquitted of that conduct, counsel's failure to object cannot be considered ineffective.

Dodge further contends that counsel was ineffective for not objecting to the prosecutor's closing argument. "A decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference. *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992); *Thomas v. Thaler*, 520 F. App'x 276, 281 (5th Cir. 2013) (stating that whether to object to a closing argument in front of a jury is "a

quintessential matter of trial strategy not to be second-guessed). Even where an objection might have some chance of succeeding, an attorney is allowed to make a strategic choice to forgo such an objection to avoid antagonizing the jury. *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992).

"[C]ounsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair." *Jones v. Estelle*, 632 F.2d 490, 492-93 (5th Cir. 1980). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To obtain relief on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356.

Dodge claims that counsel should have objected to the prosecutor stating in rebuttal argument that Dodge could have called witnesses such as Feller and Hebert. "Commenting on a failure to call witnesses generally is not an error, unless the comment implicates the defendant's right not to testify." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004). Dodge claims that the prosecutor vouched for LeBlanc's credibility by referring to the motto on the police car, "to serve and protect." The prosecutor "may not personally vouch for the credibility of a government witness" and, thus, imply that he has "additional personal knowledge about the witness and

26

facts that confirm the witness' testimony, or may add credence to such testimony." *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir. 1998) (quoting *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995). However, a prosecutor is not "prohibited from 'recit[ing] to the jury those inferences and conclusions he wishes [the jury] to draw from the evidence so long as those inferences are grounded upon evidence.'" *Id.* (quoting *Washington*, 44 F.3d at 1278).

Here, when viewed in context, that remark was made in a discussion concerning the inferences about LeBlanc that could be drawn from the evidence. The entire comment provided as of follows:

> I looked over and waved at the police officer, as I do every night, and I looked at the side of his car, and it said, "to protect and serve," and I thought about that. Troy LeBlanc protected and served for all that time. Every single witness who testified here, everybody from St. Martinville who testified, they said Troy LeBlanc was a good man. They said not only that, some who had been arrested by Troy LeBlanc said, he was a good man and a good police officer. He never did anything wrong for me. He did make a mistake, and he acknowledged the mistake he made.

Rec. Doc. 185, p. 101.

The Court agrees that there was nothing improper about his comment; therefore, counsel was not ineffective in failing to object.

## IV. Conclusion

For the foregoing reasons, based on the record and the relevant jurisprudence,

**IT IS RECOMMENDED** that Defendant Codi Dodge's original and amended MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (Rec. Docs. 214, 223) be **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Because Dodge's claims are plainly refuted by the record, no evidentiary hearing is required.  *See United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service or within the time frame authorized by Rule 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2). A

courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE in Chambers on this 31st day of January, 2024.

David J. Ayo
United States Magistrate Judge